IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTIANAH O. ADEFILA,      )
                             )
            Plaintiff,       )
                             )
       v.                    )      1:13cv940
                             )
DAVITA, INC.,                )
                             )
            Defendant.       )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court is a motion for summary judgment by Defendant DaVita, Inc. ("DaVita") as to Plaintiff Christianah Adefila's single claim for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Doc. 26.) For the reasons set forth below, DaVita's motion will be granted and the case will be dismissed.

## I. BACKGROUND

The undisputed essential facts, viewed in the light most favorable to Adefila, as the non-moving party, are as follows.

Defendant DaVita provides dialysis treatment and support services to patients with chronic kidney failure and end-stage renal disease. (Doc. 26-2 (Moore Decl.) ¶ 3.) DaVita does this, at least in part, by running dialysis clinics at the locations of its clients. (Id. ¶ 4.) These clients include Alamance Regional Medical Center ("ARMC") and Select Specialty Hospital ("Select").

(Id.)  Both of these clients have the contractual right to refuse to accept any employee that DaVita assigns to work on their premises.  (Id.)

Adefila applied to DaVita to work as a nurse and was granted an interview in September 2012 with Shatisha Moore for a position as an acute dialysis nurse.  (Id. ¶ 6.)  During the interview, Moore told Adefila that the position was for work at ARMC and would report to Moore.  (Id. ¶ 7.)  She also told Adefila that, if hired, she may be assigned to work at Select for some periods.  (Id. ¶ 8.)[1]  Although Adefila had previously worked for Select as a registered nurse from May to June 2012, she did not disclose it during the hiring process, nor did she tell Moore that she had been terminated by Select for leaving prescription medicine unattended in a patient's room (a charge Adefila does not deny). (Adefila Dep. at 2, 4-5, 21, Doc. 26-1.)[2]  Rather, she deliberately withheld this information because she was fired and thereafter filed an employment discrimination claim against Select with the Equal Employment Opportunity Commission ("EEOC"), claiming discrimination and hostile work environment based upon her

---

[1]  Adefila could not recall in her deposition whether Moore mentioned Select was a client during the initial interview or during orientation. (Adefila Dep. at 11–12, Doc. 26-1.)

[2]  DaVita has submitted two different documents for Adefila's deposition transcript, each with different excerpts.  The docket number is retained in the citation to show the source of the cited facts; the page cited is of the docket entry, not of the deposition itself.

national origin and alleged disability. (Adefila Dep. at 6-7, 21 & Ex. 1, Doc. 26-1; Doc. 32 (Adefila Aff.) ¶ 2.)[3] DaVita hired Adefila, who began work on October 15, 2012. (Adefila Dep. at 16, Doc. 26-1.)

As a DaVita employee, Adefila was directed to report to Select for orientation on October 24, 2012. (Adefila Aff. ¶ 3.) An hour after Adefila arrived there, Moore called her and directed that she leave Select's premises immediately; Moore reported that Select had called and said it did not want her treating their patients because she (Adefila) had worked there, been fired, and filed an EEOC charge against Select. (Adefila Dep. at 19, Doc. 26-1.) Adefila went to Moore at ARMC, where Moore repeated the information reported by Select and, according to Adefila, said, "I cannot have you work here anymore. You have a charge out there." (Id. at 20.) Moore was disappointed that Adefila had not disclosed her prior employment with Select in her application or during her interview and told Adefila she had been "dishonest"; Adefila responded that she did not disclose the employment because she "knew" that, if she had been truthful, Moore would not have hired

_____

[3] Adefila's EEOC charge was still outstanding at the time of her application and interview with DaVita. (Adefila Dep. at 8.) She later filed an action against Select in this court, asserting claims under Title VII of the Civil Rights Act and the Americans with Disabilities Act. Her lawsuit was dismissed on Select's motion for summary judgment, with costs taxed against Adefila. Adefila v. Select Specialty Hospital, ___ F. Supp. 2d ___, No. 1:13cv68, 2014 WL 2882931 (M.D.N.C. June 25, 2014); Adefila v. Select Specialty Hospital, No. 1:13cv68 (M.D.N.C. Nov. 6, 2014).

her.  (Id. at 21.)  Adefila pleaded with Moore not to fire her, and Moore said she would have to talk with her boss but directed Adefila to come back the next day.  (Id. at 22-23.)  Moore did not fire Adefila, but told her to report for orientation at ARMC.  (Id. at 22-24.)

The next day, Adefila reported to ARMC, another DaVita client. (Id. at 22-25.)  ARMC's employee, Olivia Rogers, performed a pre-employment assessment on Adefila, which ARMC required of all new workers at ARMC and for employees of businesses like DaVita that assign employees to work at ARMC.  (Doc. 26-4 (Rogers Decl.) ¶¶ 3-4.)  ARMC does not permit anyone who has failed the assessment to work for it.  (Doc. 26-3 (Fitts Decl.) ¶ 3.)  During the assessment, Rogers asked Adefila to complete a number of forms, which took Adefila an hour to do even though it should have taken only fifteen minutes.  (Rogers Decl. ¶ 5.)  Adefila was also given a mask test and, although she had worn respiratory masks for twenty years, she failed three times because she kept touching the mask after the test had begun, contrary to Rogers' express instructions.  (Id. ¶ 6; Adefila Dep. at 26, Doc. 26-1.)  Adefila was also very slow in responding to questions, failed to follow a simple command to wait in the exam room, and did not understand Rogers' statement that she would take her to the lab for blood work.  (Adefila Aff. ¶ 7.)  Based on her interactions with Adefila, Rogers recommended against employing Adefila and so informed ARMC Employee

4

Partnership Specialist Sonya Fitts. (Rogers Decl. ¶ 8 & Exs. 1-2; Fitts Decl. ¶ 4.) At the time, Rogers did not know that Adefila had made an employment discrimination charge against Select. (Rogers Decl. ¶ 9.)

On October 30, 2012, not knowing she had failed the health assessment, Adefila reported to a dialysis center in Burlington. (Compl. ¶ 12.[4]) The technician with whom she worked would not explain how to do her work. (Id.) Adefila reports that when she asked why, the technician responded, "I don't have to tell you or show you nothing because there is a reason why you were sent here as against working in the unit you were hired for." (Id.) Adefila worked at that unit for two days before she again met with Moore. (Id. ¶ 13.)

Fitts called Moore and informed her that Adefila had failed her assessment and was not cleared to work at ARMC. (Fitts Decl. ¶ 5.) When Fitts relayed this message, she did not know that Adefila had filed an employment discrimination charge against Select. (Id. ¶ 6.)

On November 5, 2012, Moore met with Adefila and informed her that she was not cleared to work at ARMC because ARMC would not let her work with its patients. (Adefila Dep. at 31, 33, Doc. 26-1.) Adefila reports that Moore told her, "you are not doing well,"

---

[4] Although when Adefila originally filed her complaint it was unverified, she has since verified it. (See Adefila Aff. ¶ 1.)

"I cannot have you anymore," and that Moore "was terminating [her] employment," but Moore advised her that she could apply for a different position with DaVita and gave her two to three weeks to do so. (Id. at 30, 35, and 38; Adefila Dep. at 18–21, Doc. 33-1; Moore Decl. ¶ 17; Adefila Decl. ¶ 7.) According to Adefila, although Moore told her she had two to three weeks to re-apply for a DaVita position,

> I didn't understand what [Moore] meant, and I didn't want to sit there, argue with her, and be walked out by a police or security. I wasn't going to go through all that crap. So all I said was, You recommend me? Am I applying? And she said yes, and I just got up, Thank you, and walked out. I didn't have time to be treated like trash.

(Adefila Dep. at 21, Doc. 33-1.) After this meeting, however, Adefila "never" applied for another position with DaVita. (Adefila Dep. at 21, Doc. 33-1; Moore Decl. ¶ 18.) Adefila claims she was terminated "on or about November 5, 2012." (Adefila Decl. ¶ 7.) DaVita claims that it fired Moore effective November 25, 2012, after her period to re-apply for a position had passed, based on four alleged reasons:

> [1] the fact that Select had refused to allow Ms. Adefila to work at its hospital, [2] the fact that Ms. Adefila had omitted her prior employment by Select on her DaVita employment application, [3] the fact that Ms. Adefila failed the ARMC assessment and so she would not be permitted to work at that hospital, and [4] based upon Ms. Adefila's failure to identify any other vacant position at DaVita that she was qualified to perform.

(Moore Decl. ¶¶ 18, 19.)

6

On December 17, 2012, Adefila filed a charge of discrimination against DaVita with the EEOC, alleging that she was fired for having filed an EEOC charge of discrimination against Select, her former employer. (Adefila Dep. Ex. 8, Doc. 26-1.) On August 9, 2013, the EEOC dismissed the charge, issued Adefila a right to sue letter, and concluded that the EEOC could not determine that DaVita had violated any statute. (Id.)

On October 23, 2013, Adefila, proceeding *pro se*, filed the present action, claiming discriminatory retaliation under Title VII of the Civil Rights Act of 1964. Having completed discovery, DaVita moves for summary judgment (Doc. 26); Adefila has responded, now by counsel (Doc. 31); and DaVita has replied (Doc. 33). The motion is ready for resolution.

## II.   ANALYSIS

### A.   Standard of Review

A court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine dispute of material fact remains. Where, as here, the non-moving party has the burden of proof, the moving party is entitled to summary judgment if it demonstrates that the non-moving party's evidence is insufficient to establish an essential element of her claim. Celotex Corp. v. Catrett, 477

U.S. 317, 322-23, 325 (1986). For the purposes of this motion, the court regards Adefila's statements as true and draws all inferences in her favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). But she must establish more than the "mere existence of a scintilla of evidence" to support her position. <u>Id.</u> at 252. If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50. Ultimately, summary judgment is appropriate where the non-movant fails to offer evidence on which the jury could reasonably find for her. <u>Id.</u> at 252.

**B.    What Documentary Evidence May Be Considered**

Summary judgment allows the court "to forecast the proof at trial to determine whether consequential facts are in dispute, and if not, to resolve the case without a trial." <u>Mitchell v. Data Gen. Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993), <u>modified on other grounds by</u> <u>Stokes v. Westinghouse Savannah River Co.</u>, 206 F.3d 420 (4th Cir. 2000). But the proof that may be considered in that forecast is not unlimited. In its reply brief, DaVita has objected to several pieces of evidence relied upon by Adefila to show a genuine dispute of material fact. Although Adefila had a right to file a surreply to address these evidentiary objections, <u>see</u> LR 7.6; <u>Luna-Reyes v. RFI Const., LLC</u>, No. 1:14CV235, ___ F. Supp. 3d ___, 2014 WL 5531354, at *2 (M.D.N.C. Nov. 3, 2014), she has not elected to do so. The court will now consider DaVita's arguments

8

in turn.

### 1. Sham Affidavit Rule

First, DaVita objects to reliance on statements in Adefila's affidavit it contends are inconsistent with her deposition testimony. (Doc. 33 at 1.) Adefila's deposition was taken by counsel for DaVita, apparently while Adefila was still proceeding *pro se*. After DaVita served its motion for summary judgment, Adefila has responded to the motion, through counsel, with an affidavit executed by her.

DaVita's argument rests on the sham affidavit rule. This rule prohibits a party from creating a genuine issue of material fact by relying on an affidavit created after the party's deposition has already been taken, when the affidavit is materially inconsistent with the deposition testimony. The rule acknowledges that "prior depositions are more reliable than affidavits" and that affidavits "are usually drafted by counsel, whose familiarity with summary judgment procedure may render an affidavit less credible." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). The rule has its genesis in a Second Circuit case from 1969, Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572 (2d Cir. 1969), and the general approach has found approval with virtually every federal circuit, as well as the Supreme Court, see Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999); Jiminez, 503 F.3d at 252 (collecting circuit court cases).

The Fourth Circuit has articulated a version of the sham affidavit rule, explaining that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) (citing Radobenko v. Automated Equipment Co., 520 F.2d 540, 544 (9th Cir. 1975)). In Barwick, the Fourth Circuit also quoted and approved of the rule as set out in Perma Research: "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id. (quoting Perma Research, 410 F.2d at 578).

First, DaVita moves to strike statements in Adefila's affidavit that have no analogues in the deposition, under the theory that Adefila had the opportunity to make these statements at her deposition and explicitly or implicitly declined to do so. (Doc. 33 at 2.)[5] The court declines to strike these statements given the facts of this case. As the Second Circuit, the progenitor of the sham affidavit rule, has held, when a deponent

---

[5] DaVita relies on the following colloquy during Adefila's deposition, at which she appeared *pro se*:

    Q.   . . . Have you told me everything that you think supports your claims?
    A.   Yes.
(Adefila Dep. at 27, Doc. 33-1.)

was not represented by counsel at the deposition, statements in a subsequent affidavit should only be considered a sham when they are "directly contradictory," not when they are only "arguably contradictory." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996); see also id. ("In short, defense counsel did not ask questions at the first deposition sufficient to elicit the specific content of the conversation between Hayes, Grillo and Tillman at the February 12, 1989 meeting. . . . As a result, we cannot conclude that the two depositions are contradictory without drawing an improper inference as to [plaintiff's] credibility." (emphasis added)).

DaVita has specifically requested that the court disregard the parts of Adefila's affidavit stating that her work was "overly critiqued" and that the mask test was a "sham." (Adefila Aff. ¶¶ 5-6.) These statements, although they will be disregarded for other reasons, see infra Part II.B.3, will not be disregarded under the sham affidavit rule because they concern issues not explicitly broached by defense counsel during Adefila's deposition and do not "directly contradict" her deposition testimony.

Second, by contrast, several of the statements in Adefila's affidavit do directly contradict her earlier deposition testimony. In her affidavit, Adefila states that she did not fail the mask test at ARMC (Adefila Aff. ¶ 6); but in her deposition, she admitted that she failed the mask test (Adefila Dep. at 12, Doc.

33-1). These statements are in direct contradiction, so her affidavit statement to this effect will be disregarded for this summary judgment motion.

Similarly, in her affidavit, Adefila states that she did not reapply for other positions because she was not qualified for any of them (Adefila Aff. ¶ 7); but in her deposition, Adefila confessed that she had "never" looked for another job with DaVita (Adefila Dep. at 18–21, Doc. 33-1). Even under more generous articulations of the sham affidavit rule, litigants must explain subsequent inconsistent statements in an affidavit in order to avoid the rule. See Jiminez, 503 F.3d at 254 ("We have also held that an affiant has the opportunity to offer a 'satisfactory explanation' for the conflict between the prior deposition and the affidavit. When a party does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as a 'sham,' therefore not creating an impediment to a grant of summary judgment based on the deposition." (citation omitted)). Adefila has not explained this inconsistency. Therefore, the court will disregard Adefila's statement that she was not qualified for any other position at DaVita.[6]

---

[6] Alternatively, the affidavit statement could be disregarded for failing to make a statement based on personal knowledge, as required by

## 2. North Carolina Division of Employment Security Decision

DaVita argues that the court must disregard Adefila's submission of a decision by the North Carolina Department of Commerce Division of Employment Security that concluded that she is not disqualified from receiving benefits. (Doc. 33 at 3; Adefila Aff. at 6; Doc. 1-2.) DaVita cites N.C. Gen. Stat. § 96-4(x)(8), which prohibits the admission of any "finding of fact or law, judgment, determination, conclusion or final order" by the Division of Employment Security in any proceeding before a "court or judge of [North Carolina] or the United States." Adefila has not offered any reason why the evidence is admissible.

At summary judgment, parties can only rely on proof that would be admissible under the rules of evidence. Fed. R. Civ. P. 56(c)(1)(B), 56(c)(2). Although state statutory privileges do not automatically apply to federal claims in federal court, they can apply when an asserted federal interest is outweighed by "a state's policy reasons for crafting a legislative privilege and . . . reasons of comity." Hartsell v. Duplex Products, Inc., 895 F. Supp. 100, 102 (W.D.N.C. 1995) (citing United States v. Cartledge, 928 F.2d 93, 96 (4th Cir. 1991)), aff'd, 123 F.3d 766 (4th Cir. 1997). On multiple occasions, federal courts have held that N.C.

---

Federal Rule of Civil Procedure 56(c)(4). Since Adefila did not look at any of DaVita's open job postings, she could not have known whether she qualified for any of them.

Gen. Stat. § 96-4(x)(8) represents weighty enough interests to warrant exclusion of evidence on a motion for summary judgment. See Rudolph v. Buncombe Cnty. Gov't, 846 F. Supp. 2d 461, 466 & n.2 (W.D.N.C. 2012), aff'd, 474 F. App'x 931 (4th Cir. 2012); Smith v. Computer Task Group, Inc., 568 F. Supp. 2d 603, 610-11 (M.D.N.C. 2008) (excluding Employment Security Commission decision under prior codification at N.C. Gen. Stat. § 96-4(t)(8)); Stroud v. Tyco Electrs., 438 F. Supp. 2d 597, 600 & n.2 (M.D.N.C. 2006); Hartsell, 895 F. Supp. at 103. Thus, the Employment Security decision will not be considered for purposes of this motion.

### 3. Other Challenges to Adefila's Affidavits

DaVita argues that various parts of Adefila's affidavits must be disregarded under Federal Rule of Civil Procedure 56(c)(4), which requires that affidavits supporting or opposing a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Under this rule, summary judgment affidavits that are conclusory or based upon hearsay shall not be considered. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996). More specifically, a plaintiff's "[c]onclusory assertions" about an employer's "state of mind and motivation" do not create a genuine dispute of material fact sufficient "to withstand summary judgment." Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

14

Adefila has essentially presented two affidavits to support her argument that there is a genuine dispute of material fact. The first is her affidavit presented in opposition to summary judgment. Several parts of this affidavit are inadmissible, being either conclusory or opinions of others' states of mind — or both. For example, the court will disregard Adefila's statement that, "[a]lthough [Moore] did not immediately fire me, her attitude, as well as the attitude of others, towards me changed since they learned that I had filed a complaint against my former employer." (Adefila Aff. ¶ 5.) These are opinions, *unsupported by fact*, of DaVita's employees' states of mind, which Adefila aims to impute to DaVita. Likewise, the court disregards Adefila's contention that "Rogers created an unorthodox 'mask test' for the sole purpose of failing me. My orientation and training was a sham, as if they all knew that I would be terminated shortly." (Id. ¶ 6.) To the extent this contention is offered as an opinion of another's state of mind (e.g., that the sole purpose was to fail Adefila, that the orientation and training was a sham, and the implication that everyone knew she would be terminated shortly), it will be disregarded.

Adefila's second affidavit is essentially her complaint. While a non-movant on summary judgment ordinarily cannot rely on matters pleaded in a complaint, a verified complaint "is the equivalent of an opposing affidavit for summary judgment purposes,

when the allegations contained therein are based on personal knowledge." <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991). Adefila purports to convert her original complaint into a verified one through the first paragraph of her subsequent affidavit. (Adefila Aff. ¶ 1 ("As the Plaintiff, I have read the Complaint filed pro se in this matter and the allegations contained therein, to the best of my knowledge, are true.").) DaVita lodges no objection to this technique. To the extent the allegations in the complaint comply with the rules for affidavits explained above (and many of its allegations are redundant with those in the affidavit), they have been considered in this motion for summary judgment.

## C. Title VII and the Prima Facie Case

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees on the basis of sex, race, color, national origin, and religion. Title VII not only prohibits such discrimination, but also retaliation by an employer against an employee who has made a "charge" of discrimination under Title VII — so-called "participation" activity. 42 U.S.C. § 2000e-3; <u>Laughlin v. Metro. Washington Airports Auth.</u>, 149 F.3d 253, 259 (4th Cir. 1998) ("An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII . . . .").

Neither party argues that there is direct evidence of

retaliation; instead, each relies on the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which applies to retaliation claims. Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1228 (4th Cir. 1998) (citing Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985)). Under this framework, a plaintiff establishes a prima facie case by demonstrating three elements: "(1) she engaged in protected activity, (2) the employer took adverse action, and (3) there was a causal connection between the two." Id. In this case, only the third, causal element of the prima facie case is disputed. (Doc. 31 at 5; Doc. 33 at 4.) The particular dispute is just how strict a "causal connection" is required for the prima facie case.

In 2013, the Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in [42 U.S.C.] § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013). DaVita argues that, post-Nassar, the "causal connection" required for the prima facie case is "but-for" causation. (Doc. 33 at 3.) Adefila does not mention Nassar. (See Doc. 31 at 6.)

The Fourth Circuit has not yet addressed Nassar in a published opinion, but it has commented on the case in several unpublished

17

opinions.[7] For example, it has noted that <u>Nassar</u> runs contrary to the circuit's earlier precedent, which had only required proof that the employee's engagement in a protected activity was a "motivating factor" for the adverse employment action. <u>See</u> <u>EEOC v. A.C. Widenhouse, Inc.</u>, 576 F. App'x 227, 229–31 (4th Cir. 2014). It has also noted that "temporal proximity alone" cannot meet the but-for causation standard established by <u>Nassar</u>. <u>Staley v. Gruenberg</u>, 575 F. App'x 153, 156 (4th Cir. 2014) (citing <u>Hernandez v. Yellow Transp., Inc.</u>, 670 F.3d 644, 660 (5th Cir. 2012). The Fourth Circuit has further suggested that, after <u>Nassar</u>, the employee carries the ultimate burden of showing but-for causation "[t]hroughout" the burden-shifting process. <u>Rome v. Dev. Alternatives, Inc.</u>, No. 13-1935, 2014 WL 5013020, at *1 (4th Cir. Oct. 8, 2014); <u>accord</u> <u>Felt v. MEI Technologies, Inc.</u>, No. 14-1079, 2014 WL 4978583, at *1 (4th Cir. Oct. 7, 2014); <u>Bell v. Shinseki</u>, No. 13-1890, 2014 WL 4555250, at *1 (4th Cir. Sept. 16, 2014).

The district courts in this circuit are not in agreement on the application of <u>Nassar</u>, with some requiring but-for causation at the prima facie stage and others requiring it only at the pretext stage. <u>See</u> <u>Cade v. Astrue</u>, No. 2:11-CV-03498-PMD-BM, 2014

---

[7] Unpublished opinions of the Fourth Circuit are not precedential. <u>See</u> <u>Collins v. Pond Creek Mining Co.</u>, 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

WL 4635568, at *4 n.5 (D.S.C. Sept. 15, 2014).  This court has noted the disagreement before.  See Castonguay v. Long Term Care Mgmt. Servs., LLC, No. 1:11CV682, 2014 WL 1757308, at *7 n.16 (M.D.N.C. Apr. 30, 2014).  As in Castonguay, however, it is not necessary to resolve the issue in this case.  That is because, for the reasons that follow, even assuming that Adefila can meet her initial burden of proving a "causal connection," she fails to show but-for causation at the pretext stage.

### D.  DaVita's Legitimate, Non-Discriminatory Reasons for Terminating Adefila

When a plaintiff establishes her prima facie case, the burden then shifts to the employer "to produce a legitimate nondiscriminatory reason for the adverse action."  Karpel, 134 F.3d at 1228.

DaVita offers a legitimate, non-discriminatory reason for firing Adefila; among its reasons:  Adefila was rejected from working at ARMC by ARMC, one of the specific clients Adefila was hired to service, and Adefila did not apply for other positions with DaVita.  (Moore Aff. ¶¶ 12-17; Doc. 33 at 6.)  Although Adefila challenges the reason as pretextual, she offers no argument that it was an illegitimate reason for terminating her.  (See Doc. 31 at 6-7.)  Therefore, DaVita has met its burden of production at this point.

**E.   Adefila's Proof of Pretext**

Once an employer produces a legitimate, nondiscriminatory reason for the adverse action, the burden shifts to the plaintiff to show that "the employer's reason was mere pretext for retaliation by showing 'both that the reason was false and that discrimination was the real reason for the challenged conduct.'" Smith v. First Union Nat. Bank, 202 F.3d 234, 248 (4th Cir. 2000) (emphasis added) (quoting Jiminez, 57 F.3d at 377-78).   The "ultimate," rather than intermediate, burden of persuasion throughout this burden-shifting framework rests on Adefila to prove intentional retaliation.   Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).   And, in particular, Adefila must ultimately prove that, but for filing her charge against Select Specialty, DaVita would not have fired her.   Nassar, 133 S. Ct. at 2534.   If Adefila is successful, intentional, discriminatory retaliation may be inferred, and her claim may proceed to trial. Jiminez, 57 F.3d at 378.

Adefila argues that DaVita's reliance on ARMC's health assessment was pretextual. (Doc. 31 at 7.)  Specifically, Adefila argues that DaVita subjected her to "sham training and testing procedures," designed to ensure her failure, a trap that she could not evade.  (Id.)  However, there is simply no admissible evidence that her training and testing were a sham.

Adefila, in her post-deposition declaration, does opine that

Rogers' mask test was "unorthodox" and concludes that it was a "sham" pretext for terminating her. (Adefila Aff. ¶ 6.) But such a conclusory opinion is not a "fact" for purposes of the burden-shifting framework or the requirements of Rule 56(c). See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) (holding that a party's "conclusory allegations" are "insufficient to support a finding of pretext").

Adefila's case does not fail on this point alone. Even assuming ARMC's mask test was a sham, the undisputed evidence shows that no one at ARMC had any knowledge of Adefila's EEOC charge against Select when she failed the health assessment. (Rogers Decl. ¶ 9; Fitts Decl. ¶ 6.) Moreover, ARMC, like Select, had a contractual right "to refuse to accept any employee that DaVita assigns to perform to work on [its] premises." (Moore Decl. ¶ 4; Adefila Dep. at 36, Doc. 26-1.) There is no evidence that DaVita requested or even suggested that ARMC fail Adefila. And even if ARMC's health assessment suffered from some professional deficiency, it is not the province of the court to question the wisdom of the mask test, so long as Adefila's failure of the test "truly was the reason for [her] termination." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) ("We do not sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants."

(quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998))).

Adefila's only counter-argument is that "[b]oth parties agree that Moore, DaVita's representative, wanted to fire Adefina [sic] immediately upon learning of the complaint against Select." (Doc. 31 at 8.) In fact, DaVita has not made this concession, (Doc. 33 at 5), and Adefila points to no part of the record evidencing such a fact.[8] Rather, DaVita simply noted that for purposes of its motion for summary judgment, the court must accept Adefila's admissible testimony as true. (Doc. 33 at 5.) However, Adefila's

---

[8] While the court need not scour the record for support for bare statements, see Local Rule 7.2(a)(2), the only conceivable basis for this contention is Adefila's statement that Moore "told me that I could no longer work at DaVita because I had filed a complaint against Select Hospital. Essentially, she said DaVita could not have me as an employee 'with charges out there.'" (Adefila Aff. ¶ 5; accord Compl. ¶ 7.) If this is Adefila's intended support, it does not suffice.

To be sure, DaVita could not force Select to allow Adefila to work for it, "with charges out there" or not, because Select had a contractual right to refuse Adefila's services. (Adefila Dep. at 36, Doc. 26-1.) Moreover, even after Select rejected Adefila, Moore arranged for Adefila to work at another DaVita client, ARMC, rather than to terminate her. Yet, Adefila was also rejected by ARMC, which, like Select, had a contractual right to do so. Adefila's contention that the ARMC testing was a "sham" is purely speculative on this record, unsupported by any facts after discovery has closed. And even after ARMC rejected her, Adefila testified in her deposition, Moore invited her to apply for other open positions with DaVita and gave her two to three weeks to do so. (Adefila Dep. at 38, 42, Doc. 26-1; Adefila Dep. at 18–21, Doc. 33-1.) But Adefila never did. (Adefila Dep. at 38, 42, Doc. 26-1.) Moore's statement, on this record and in the light most favorable to Adefila, is evidence of a motivating factor behind Adefila's termination. But in light of undisputed evidence that DaVita continued to employ Adefila after Moore's alleged statement, that Moore sent Adefila to ARMC for work, Adefila's failure to demonstrate that DaVita had any other position for her, and DaVita's legitimate business reasons for firing Adefila (including dishonesty and rejection by Select and ARMC), no reasonable jury could find that, but for Adefila's participation in her EEOC charge against Select, DaVita would not have fired Adefila.

accusation that Moore "wanted" to fire her is nothing more than a "conclusory assertion" about her employer's state of mind and motivation, which is "not enough to withstand summary judgment." Goldberg, 836 F.2d at 848.

At this final point in the burden-shifting framework, Adefila fails to carry her burden, not even providing the "mere existence of a scintilla of evidence" to support her position. Anderson, 477 U.S. at 252. Accordingly, DaVita's motion for summary judgment will be granted.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that DaVita's motion for summary judgment (Doc. 26) is GRANTED, and this case is DISMISSED WITH PREJUDICE.

/s/   Thomas D. Schroeder
United States District Judge

January 20, 2015